Truman v. Orem City Case Number 19-4133 for the appellant is Mr. Baldwin. You may proceed. Thank you, Your Honor. Mr. Baldwin, representing Appellant Truman Conrad. May it please the Court, this case involves a dispute about the defendants' intent at their meeting with the medical examiner and the nature of that pre-prosecution meeting where the prosecutor and the police officers misrepresented that Heidi traveled 12 feet from where the gun was fired, which the medical examiner knew was impossible if she had fired the weapon. The District Court erred because it resolved those disputes by inverting both the motion to dismiss and summary judgment standard, construing allegations, evidence, and inferences against Conrad rather than in his favor. And I want to be clear, our claims in this case that are implicated in this appeal arise from fabrications of evidence that gave rise to due process violations. What's at issue in this appeal is not a malicious prosecution claim. So first, turning to the motion to dismiss error, the allegations in the complaint were adequate to state a claim for fabrication of evidence. The allegations placed the prosecutor at the scene of the incident on four separate occasions, including for two hours on the night of the incident, where the prosecutor was present for the police screening the scene and evaluating blood evidence. And again, for a scene reconstruction where the officers reenacted what they believed happened that night, including having an officer lay in the space where Heidi's body was found in an eight-foot room and measuring that space. The allegations also support that Johnson was in the meeting with the medical examiner and that the medical examiner was told that there were 12 feet of additional space between Heidi's body and the doorway. If I could just sort of get a little more precision here, because you were using the passive voice, who fabricated the evidence and when did the fabrication occur? The allegations are that both the police officers and the prosecutor fabricated the evidence and the medical examiner's declarations. Who? Both. The slide contained a representation of 12 feet. The In fact, the medical examiner's declaration expressly states at page 242 and 244 of the record that information measurements and diagrams were shown to the medical examiner by law enforcement as well as the prosecution team. And so the allegations and the evidence show that both the police and the prosecutor advanced the misrepresentation about the measurements to the medical examiner. Where did you allege that the prosecutor knew that information was false? It's alleged based upon the prosecutor's presence in the home where the only reasonable inference is that no reasonable person could possibly believe that the eight foot space could hold Heidi's five foot body and an additional 12 feet of space. That mismeasurement is so extreme that no reasonable person could believe that information was correct and under the 12b6 standard that inference must be drawn in Mr. Truman's favor, not against him. And Judge Simcovich, to your question about when the fabrication occurred, it was in that meeting. It was when the misrepresentation was made to the medical examiner, which the medical examiner has explained was the basis for changing his determination as to the cause of death to homicide because is based on the understanding that she had traveled the misrepresentation that Heidi had traveled 12 feet. The medical examiner knew that that would be physically impossible if she had fired the gun herself. And so based upon that misrepresentation, the medical examiner amended the death certificates to indicate that the cause of death was homicide. And that was the fabricated evidence. Well, you still have another step there, and that is you have a prosecutor that needs to file charges and then try a case, right? Yes. And there are a number of cases that discuss how the trial interacts with the fabrication of evidence of evidence context under the due process clause. In an opinion that you had authored, Judge Simcovich, you acknowledged that due process may be implicated by fabricated evidence, but only if that evidence is in fact used against the accused, which would be at a trial. That case was Warnock v. Cooley from 2018. And the Seventh Circuit has described that exact issue in a helpful way in a case called Fields v. Worry, where the Seventh Circuit describes that the constitutional violation arises when the fabrication occurs, but that the measure of damages is where the trial or the subsequent prosecution comes into play, but that the constitutional harm itself occurs when the evidence is fabricated under the due process clause. Well, don't we have even a better case in this circuit? I believe Judge Carson authored Bledsoe. We absolutely do. And that certainly speaks to the absolute immunity component of this, where it is certainly a great case for us. And Judge Carson, in that case, explained that even in a pre-prosecution meeting where a prosecutor allegedly met with fabricated evidence, dropped charges against that accused, and filed charges against a different person, was nonetheless not entitled to absolute immunity. And that case absolutely is a helpful case for us because the facts of that case are far closer to the line between an investigative role versus a prosecutorial role than what happened in this case, where both the police and the upon which the prosecution would proceed and not to engage in prosecutorial decision-making of any kind. Now, in your case, you were unable to allege the facts with the same specificity that they were in Bledsoe, though, isn't that right, as to the prosecutor's conduct? Well, we weren't able to describe the precise scheme perhaps in the same, perhaps with the same depth, although I'm not sure that that's true, given that the nature of the fabricated evidence here is different than the nature of the fabricated evidence in that case. In that case, the fabricated evidence was a trumped-up theory of guilt. And so the allegations on there, it would self-evident what the specific misrepresentations were. Here, the specific misrepresentations... In that case, they went and they talked witnesses into changing their stories and implicating other people and things like that, right? Exactly. And here, it was a much more... I'm sorry, Garner. They had the specifics of that with the person who was allegedly turned, implicating directly the prosecutor. Yes, but we also have the same level of specificity as to the specific fabrication in this case, which is the misrepresentation that Heidi's body traveled 12 feet after the gun was fired. That is the extent of the fabrication, is the misrepresentation of fact that led to the medical examiner altering his expert evaluation of the medical record to conclude that the cause of death was homicide. Again, I know you've covered this a bit already in response to other questions, but I would like to hear more about how do we know that the misrepresentation was intentional on the part of the prosecutor, not the team, but this prosecutor? Well, the standard that applies to the prosecutor is the motion to dismiss standard. And again, no reasonable person who had been in the room, as we had alleged, for the amount of time that he was in the room and conducting the activity that he was conducting could possibly believe that that eight foot space could hold a five foot body and an additional 12 feet of space between Heidi's feet and the doorway. No reasonable person could conclude that. And on the 12B6 standard, that is adequate evidence of the prosecutor's intent. Now, I'd like to quickly turn to the police officers. I see I'm running out of time and I would like to reserve some time for rebuttal. We also have sufficient undisputed facts and evidence to demonstrate that summary judgment was improper here. We have, it is undisputed that the officers were at the scene, measured the scene, directed a scene reconstruction, that they met with the medical examiner, that the information provided to the medical examiner was incorrect. And I would point the court to compare Officer Wallace's statements at 1221 of the record and 2447 of the record. He himself creates the factual dispute that makes summary judgment improper in this case. On the one hand, he argues that he believed the measurements were correct at all times. On the other hand, at the second trial, which is at 1221 of the record, Officer Wallace testifies that in 2013, he in fact did know that the 12 foot measurement was incorrect. That is enough to, for a reasonable jury to conclude that he intentionally misrepresented that information when he gave it to the medical examiner and is sufficient to avoid summary judgment in this case. What do we do with the claim preclusion? Isn't that what the district court went off on in summary judgment? Claim preclusion is a red herring in this case, and the easiest way to see that is to read the state court's order. In the order, the state court describes the measurement at issue and a confusion that has happened in the two mismeasurements. One is found in the trial exhibit nine, and that's the mismeasurement that the state court discusses. The mismeasurement that's at issue in our case that gave rise to the due process violation and misappeal is the 12 foot mismeasurement. The state court only discussed the mismeasurement and the confusion between the 13.9 feet and 139 inch mismeasurement. Well, all of these mismeasurements were before the state court, were they not, when there was the motion to dismiss the charges? They had certainly happened and they were before the state court in some sense, but the state court's only comment on the mismeasurement at 607 and 08 of the record and 642 and 43 of the record only speak to the 143 inch versus 14.3 foot mismeasurement, not to the 12 foot error. So the state court only opined as to an issue that is not, that is not the source of our fabrication of evidence claim in this appeal. And the preclusion issue is a distraction for that reason. And if there are no further questions, I'd like to reserve the remainder of my time for rebuttal. All right. Thank you. Let's hear from the, um, Mr. Sturba. Leading off than me. Morning, Your Honor. Jefferson. Jefferson Gross appearing on behalf of the Orem City defendants. It must be confusing to the court how a two and a half foot measurement error, 15% of the measurements somehow turns into 12 feet. And the argument is made, of course, it was obvious the measurements were wrong because there's not 12 feet in the hallway, but they're conflating two different things. In effect, trial exhibit nine, which had the correct measurements, depicts the 12 feet that Mr. Truman is relying upon now. And the different, the allegation wasn't that she traveled 12 feet within the hallway. Instead, if you look at Dr. Lisa's declaration, appellate record number 2504, he explains that the police opined that Mrs. Truman was shot in the bathroom and then trapped 12 feet. Well, if you include the distance between the at least according to the inaccurate measurements. So it wasn't that there was an allegation. There was 12 feet in this hallway. It was the distance from the bathroom to where the body ended up. And that's the source of this 12 foot why we're conflating 12 feet with two and a half feet. And as I said, that this 12 feet was depicted on trial exhibit nine, which after the fact we discovered had the measurement error. So that's what we're talking about here. It's not, there weren't any suggestions to Dr. Lease that Mrs. Truman was shot in the hallway and then traveled 12 feet. It was that she was shot in the bathroom and the distance between that location and where the body ended up. So that was, that was that. The other point I want to raise is that this was all extensively evaluated by the Utah State Trial Court. And in their motion to dismiss the charges, Mr. Conrad argued that Mr. Lease was lied to and that that misconduct warranted dismissal of the case. It's not as if that wasn't addressed by the trial court. Trial court just rejected it, decided no misconduct had occurred. Second point I want to raise has to do with probable cause. Now, Mr. Truman does not dispute on this appeal that there was probable cause to detain Mr. Truman. They concede that point. And that's fatal. We cited the Pierce versus... Well, it's fatal if you're talking about a malicious prosecution case, but this is a fabrication of evidence, which is a violation of constitutional rights. So we have a bigger animal here than a state court tort. Well, and we cited, notice the supplemental authority, McCarty versus Gilchrist, 646 F. 3rd, 1281. And in that case, the Oklahoma chemist fabricated evidence. In fact, the plaintiff was exonerated and it was undisputed that the chemist had fabricated evidence. And under the 1983 claim, the court analogized that you have to go to the common law and see the elements that evolved in common law. There's the same analysis that was in Pierce versus McCarthy. Incidentally, the same chemist. And in Pierce, both parties conceded the probable cause was necessary. And so it didn't take up the issue as to whether or not existence of probable cause or lack thereof was a predicate for a claim under the fourth amendment or the due process clause under the 14th amendment. That was resolved in the McCarthy case. The court held that in order to make a 1983 claim based on a violation of the fourth amendment or 14th amendment, the plaintiff must show a lack of probable cause. Well, you're talking about the Pierce case? The McCarty case. Well, I thought you were relying on Pierce to say that the court said that probable cause is required. But I thought what the court ultimately did there was to say, well, the parties agree it's required and then went on. Correct. And so in the reply, Mr. Truman points that out, that that issue wasn't resolved. But the precise issue was resolved in the McCarthy case where it was determined the probable cause was necessary. And I think that that largely resolves this claim. When you think about a hypothetical, and I'm not a fan of hypotheticals, but you could have a case, could you not, where there was probable cause to arrest someone, but yet when you drill down to how the investigation was undertaken, there could be egregious violations of constitutional rights. So at the end of the day, yes, there were other things that got us up to probable cause, but there were also violations of constitutional rights. Can you see that happening? Um, I think as long as there exists probable cause to arrest and detain, everything's good, no matter what happened before. At least under the McCarty case. Yes. Okay. Wasn't the fabric, wasn't the fabricated evidence used at trial? The measurements were used for trial. Trial exhibit nine was used. And then the trial court, when they were evaluating again, whether there was probable cause, even if you took out those measurements, took out Dr. Leese's opinions, still maintained that there was probable cause to detain Mr. Truman. And he was held over. So until his exoneration, the trial court had determined there was probable cause for the arrest and detention of Mr. Truman. And then we get to the race judicata issue preclusion. And there are three elements for issue preclusion. And first is privity. The second is the issue must be identical. The third is that the matter was fully and fairly litigated. And the fourth is that it's a final judgment on the merits. Before the district court, Mr. Truman only argued the third element was applied. That argument was abandoned on appeal. On appeal, they raised a new argument that was not presented to the district court saying that there was no final judgment on the merits. But there was in this case. When Mr. Truman was acquitted, that was a final judgment. And all of the issues that have been litigated in the case were thereby fully resolved. And a have administrative remedies doesn't mean that's not a final judgment. Mr. What do you say to the argument by opposing counsel that this is all just a red herring, and there's really two measurements at issue? Well, I think the I mean, what they largely went on was the measurement error in the trial court. And again, we get this conflation between two and a half feet and 12 feet. But Dr. Lease's declaration was before the Utah State trial court, when they were moving for a new trial, when they're moving to have the charges dismissed. And the trial court expressly rejected the notion that something improper had happened in the interview of Dr. Lease. That's an appellate record 1187. I was going to yield the rest of my time to Mr. Sturba our time. Thank you, counsel. Yes, may it please the court. I want to address a couple questions that were raised by your honor's judge tip the bitch. You asked a specific question about fabrication. And was this miscandled evidence, destroyed evidence, falsified evidence, anything like that that would come under the broad rubric of fabrication? The answer is absolutely no. And in fact, the issue of measurements, which is addressed specifically in paragraphs 301 to 305 of the Wallace was the one who did all the measurements, nobody else was involved from the police force doing that. There's no allegation that Johnson ever did anything with respect to the scene measurements whatsoever. And I'm not suggesting that Wallace did anything wrong. My point is, there's no allegation that somehow Johnson did something that we could consider fabrication. Judge Carson, you asked, don't we have the allegation in the complaint that says the prosecutor as one of the people who presented false information to the medical examiner? Well, one of the individuals specifically named that allegation may have been made, but under a fall, that is a conclusive allegation that doesn't lead you anywhere as much less to a plausible claim. There was a meeting that was and there was a PowerPoint presented in that meeting. The allegation in the amended complaint is that was created and presented by Detective Wallace. There's no indication Johnson did that created, presented or anything like that. Well, wait a minute. There was allegation. Wallace, Cook, Ruiz, Johnson, and others, I'm quoting, were aware there were, they were aware they were present at the medical examiner with, they presented the medical examiner with false information when they represented that Heidi traveled a distance of over 12 feet after shock. And Wallace, Ruiz, and Johnson had been in the home, knew the truth and knowingly presented or allowed false evidence to be presented to the medical examiner. That's all in the complaint. Well, once again, Your Honor, I think that doesn't pass the Twombly or Iqbal test in terms of its conclusory nature, but moreover, factually. What's conclusory about that? He was there. This is what he said to the medical examiner. He was there often enough to know that this just flat out doesn't compute. What's, what's vague about that? Well, first of all, there is no representation that he made any representation of any specificity concerning measurements to the medical examiner. That's point one. Point two, as the trial court pointed out, we're really talking about a hallway and the hallway measurements were 139 inches, which got transposed into 13.9 feet. The actual measurement of that hallway was 11.4 feet, according to the state court trial judge, and in fact, the affidavit of lease was that it was 11.9 feet. The fact of the matter is there was no measurement made by Johnson. And if you're talking about two feet, which is really all you're talking about, it is possibility, but not plausibility to suggest that somehow, merely because you're in a room, present in a room, that somehow you would be aware of that there is a specific statement that says there is no evidence that detective Wallace ever told Johnson that Ms. Truman, Heidi traveled the distance of 12 feet after being shot. So Wallace didn't even tell Johnson of this 12 feet and to suggest that somehow it's a reasonable inference that you come into a room and that you can appreciate, oh no, there's actually two feet difference here. And somehow you're going to process that as material, as from a prosecutor standpoint, I just think patently it's not reasonable. Moreover, there's another issue here and it goes to the constitutional violation. It's actually in the Bledsoe case, Judge Carson. You have a situation where this PowerPoint never was submitted in evidence. It was presented to presumably the Dr. Lease in this meeting, but it wasn't evidence. It never came into evidence. Did it serve as a basis for the doctor to change his opinion? It did according to him, but the other thing is that there was cross-examination of him. The defense lawyers knew of this PowerPoint even at the preliminary hearing stages. They had Dr. Lease's report. They interviewed him. They asked him all the things that basically he was informed of by the police. And so to suggest that somehow that is a material constitutional violation, it's kind of like saying this, if you're a prosecutor and you interview a witness prior to trial, and for whatever reasons you misrepresent something, I'm not saying that happened here because that really hasn't been alleged, but let's say you do, and that impacts the witness's testimony, I'm sorry, that does not rise to the level of a constitutional violation. It's witness prep. It happens all the time, and unless you can show specifically a specific falsification by Johnson, an intentional falsification by Johnson, and he was aware of the consequences in terms of the overall trial setting, I'm afraid that is not a constitutional violation, or if it is, then I think the nature of jurisprudence in this area is going to be the body was actually found at the top of the near the top of the stairs hallway from the bathroom, and then there were some stairs going down to another level in the house, and that's where the body was found. Okay, Mr. Sturber, your time has expired, and we have some rebuttal time still for Mr. Baldwin. Thank you, Your Honor. May it please the court have just a few points. First, this was not some and I would certainly hope this isn't the type of misrepresentation that does in fact happen all the time. The prosecutor was at the scene of the accident reconstruction, not just present in the home for even just the two hours the night of the incident. The prosecutor visited the home and participated in reconstructing the events of that night, and certainly under the 12b6 standard had adequate information to satisfy the motion to dismiss standards expectations for as for McCarty, the McCarty case couldn't be clearer that that did not involve a fabrication of evidence claim and involved only a malicious prosecution claim. This court explained that two separate times in the opinion and dropped a footnote to clarify that the district court had construed it as a malicious prosecution claim, and it had done so because the plaintiff himself said that it was malicious prosecution and nothing more. On appeal, the plaintiff didn't dispute that, and if this court would like to go chase down the complaint in that case, it states one cause of action, which is a conspiracy claim arising from the prosecution. There's no question McCarty resolves nothing about this case as to the Fourth versus 14th Amendment due process implications of fabricated evidence. It is also undisputed that Wallace, in fact, represented a 12-foot error. That's at page 1385 of the record. In our opposition to summary judgment, and it is undisputed on page 3070 of the record. Finally, as to the preclusion point, the same argument has been raised throughout these proceedings, which is that the district, the state court failed to grapple with and resolve the intent question that is raised by the fabrication of evidence under the due process clause claim that is an appeal. The state court at page 1186 of the record, which is the order denying the motion to dismiss for outrageous conduct, expressly references the prior order. The court says the court previously noted a problem with inaccurate measurements being listed on the currency diagram. So going back to the prior order at page 608 of the record, paragraph five describes that the distance referenced above was really 139 inches, not 13.9 feet. That is a different mismeasurement. It is not the 12-foot mismeasurement that is at issue in this appeal. And if there are no further questions, I will submit the case. Thank you, counsel. We appreciate that. Counsel, you are excused, and the case shall be submitted. Thank you very much for appearing today.